IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| MERCEDES PINCKNEY REESE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:23-cv-00475-DCN |
| vs. ) | |
| ) | **ORDER** |
| CHARLESTON COUNTY SCHOOL ) | |
| DISTRICT; CHARLESTON COUNTY ) | |
| SCHOOL DISTRICT BOARD; and ) | |
| DONALD KENNEDY, SR, *in his official and* ) | |
| *individual capacities*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The following matter is before the court on defendants Charleston County School District Board (the "Board") and Donald Kennedy, Sr.'s ("Kennedy" and with the Board, "defendants") motion to dismiss, ECF No. 5. For the reasons set forth below, the court grants the motion as to the 42 U.S.C. § 1983 claims, declines to exercise supplemental jurisdiction over the remaining state law claims, and dismisses those claims without prejudice.

**I.   BACKGROUND**

This case arises from an employment dispute between plaintiff Mercedes Pinckney Reese ("Reese") and her employer. ECF No. 12, Amend. Compl. ¶ 17. On May 28, 2021, defendant Charleston County School District[1] (the "District") and the Board purportedly entered into an employment contract with Reese to hire her as a Staff

---

[1] Reese filed an amended complaint naming the District as a defendant after the Board and Kennedy filed the motion to dismiss. The District has not joined the motion. As such, the defendants bringing the motion remain Reese and the Board, not the District.

1

Attorney. Id. ¶¶ 17–19. The job description for Staff Attorney in the employment contract specified that Reese "shall plan, organize, direct, and control professional legal counsel representation and legal services for the Superintendent [Kennedy] and the District." Id. ¶ 22. Reese claims that, rather than working as a Staff Attorney, she was employed as the General Counsel. Id. ¶¶ 25–30. However, upon the appointment of new attorneys to serve as General Counsel, conflicts arose between Reese and the new attorneys. Id. ¶¶ 95–139. Reese became concerned that the new General Counsel was breaking state procurement rules. Id. ¶¶ 140–43. Consequently, on November 24, 2022, she sent a confidential memo to Kennedy and the Board "setting forth several serious matters of public concern." Id. However, "[s]omeone at [the Board] provided the memorandum to the press." Id. In response, the Board reported to the press that Reese's statements in the memorandum were "inaccurate" and "unfounded." Id. The following week, Kennedy requested Reese come to his office to discuss her memorandum, but the memorandum was not discussed. Id. ¶¶ 144–50. Instead, Kennedy "told [Reese] she could either resign and receive a small severance, or he would terminate her for cause." Id. Reese alleges that the reasons provided in the termination letter were pretextual; furthermore, Reese alleges that the appropriate procedural mechanisms for termination were not observed. Id. ¶¶ 151–67. This lawsuit followed.

Reese filed the complaint on February 3, 2023. ECF No. 1, Compl. On April 10, 2023, Reese filed an amended complaint, now the operative complaint, to add the District as a defendant. ECF No. 12, Amend. Compl. The amended complaint brings three causes of action: (1) First Amendment retaliation in violation of 42 U.S.C. § 1983 against Kennedy in his official and individual capacities, id. ¶¶ 174–94; (2) breach of contract

against the District and the Board, id. ¶¶ 195–205; and (3) breach of contract accompanied by a fraudulent act against the District and the Board, id. ¶¶ 206–10. On March 21, 2023, the defendants filed a motion to dismiss. ECF No. 5. On April 4, 2023, Reese responded in opposition, ECF No. 9, to which defendants replied on April 11, 2023, ECF No. 15. The court held a hearing on the motion on May 31, 2023. ECF No. 22. As such, the motion is fully briefed and now ripe for review.

## II.  STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 558 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Lab'ys, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Lab'ys, 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.   DISCUSSION

Defendants ask the court to dismiss the action in its entirety for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 5. Specifically, defendants allege that the claims against the Board must fail because the Board is not a legal entity subject to suit under South Carolina law, S.C. Code Ann. §§ 59-1-160, 59-17-10. Id. at 1. Moreover, defendants allege that Reese's 42 U.S.C. § 1983 cause of action fails as a matter of law since the complaint does not establish a violation of Reese's free speech rights and because Kennedy is entitled to qualified immunity. Id. at 2. The court first examines the 42 U.S.C. § 1983 cause of action because that claim confers subject matter jurisdiction. Upon finding the claim barred by qualified immunity, the court declines to exercise supplemental jurisdiction over the state law claims, reserving the interpretation of South Carolina law for the state court's resolution should this case be refiled.

**A. 42 U.S.C. § 1983**

Defendants provide two arguments for why the court should dismiss Reese's 42 U.S.C. § 1983 claim. First, they claim that the identified speech was not protected speech. ECF No. 5 at 2. Second, they explain that even if the claim were allowed to proceed, it would be barred because Kennedy has qualified immunity. Id. The court examines each argument in turn, ultimately finding that because the law is not clearly established as to whether Reese's speech was protected, the § 1983 claim against Kennedy is barred by qualified immunity.

### 1. Protected Speech for Public Employees

Defendants argue that Reese fails to state a claim for violation of her free speech right because the speech she references in her complaint was spoken in her capacity as a public employee, not as a private citizen. ECF No. 5-1 at 6. Defendants explain that the Supreme Court has held that First Amendment protections apply to a public employee's speech only when it is made in a private context rather than during the exercise of her official duties. Id. (citing Garcetti v. Ceballos, 547 U.S. 410 (2006)). Thus, defendants argue that Reese's retaliation claim—which is premised on the memorandum she sent the Board and Kennedy—must fail because the identified speech "is unprotected." Id. at 7.

In response, Reese argues that "whether [her] job required her to report the actions of private individuals regarding adherence to state procurement laws and the expenditure of public money is an issue of fact that cannot be determined pre discovery." ECF No. 9 at 4. She claims that whether a public employee's speech or activity qualified for constitutional protection is evaluated by a balancing test that "necessarily requires a factual analysis, which cannot be done prior to discovery occurring in a case." Id. at 4–5 (citing Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, 391 U.S. 563, 568 (1968)). Thus, Reese argues that granting the motion to dismiss on this ground would prematurely require the court to determine factually if her speech was constitutionally protected speech. Id. The court examines whether Reese has stated facts that plausibly show that a government employee's speech about an aspect of her employment is nevertheless protected First Amendment speech.

To prove that a retaliatory employment action violated a public employee's free speech rights, the employee must satisfy the Pickering v. Board of Education, 391 U.S.

563 (1968), three-prong balancing test: (1) the public employee must have spoken as a citizen, not as an employee, on a matter of public concern, (2) the employee's interest in expression at issue must have outweighed the employer's interest in providing effective and efficient services to the public, and (3) there must have been a sufficient causal nexus between the protected speech and the retaliatory employment action. Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 316 (4th Cir. 2006) (citing Pickering, 391 U.S. at 568). The first two prongs of this test are questions of law, while the third and final prong of the Pickering balancing test—which asks whether the employee's speech caused the disciplinary action—is a question of fact. See Brooks v. Arthur, 685 F.3d 367, 371 (4th Cir. 2012). Thus, on a motion to dismiss the court may determine whether the matter is of public concern and whether the government had an adequate justification for treating Reese differently from any member of the general public.

      The Supreme Court has further restricted the scope of employees' First Amendment protection by identifying two inquiries to guide interpretation of the constitutional protections accorded to public employee speech. Garcetti, 547 U.S. at 418. A court first must determine whether the employee spoke as a citizen on a matter of public concern. Id. If the answer is no, the employee has no First Amendment cause of action based on her employer's reaction to the speech. Id. If the answer is yes, then the court proceeds to the second inquiry, which asks whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. Id. In sum, "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." Id. at 419; Grutzmacher v.

Howard Cnty., 851 F.3d 332, 342 (4th Cir. 2017) ("Just as there is a public interest in having free and unhindered debate on matters of public importance, the efficient functioning of government offices is a paramount public interest. Therefore, a public employee by necessity must accept certain limitations on his or her freedom.") (internal quotation marks and citations omitted).

### a.  Public Employee versus Private Citizen

The first prong requires the court to determine whether Reese spoke in the course of her job or as a private citizen and thereafter to determine whether the content of that speech implicated a public concern. Ridpath, 447 F.3d at 316. The court begins by evaluating whether Reese spoke as a public employee or as a private citizen.

Determining whether speech was made in the course of an employee's job requires courts "to engage in a 'practical' inquiry into the employee's 'daily professional activities.'" Hunter v. Town of Mocksville, 789 F.3d 389, 397 (4th Cir. 2015) (quoting Garcetti, 547 U.S. at 422, 424). Whether the employee spoke at her workplace or away from it is not dispositive. Garcetti, 547 U.S. at 420. Likewise, courts must look beyond formal job descriptions, and "the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties." Id. at 424–25.

Defendants argue that Reese's allegations fail to support a cause of action for First Amendment retaliation, as the limited guidance on this issue shows that she was speaking in her capacity as an employee and not in her capacity as a private citizen. ECF No. 5-1 at 7. Defendants emphasize that "[w]hen a public employee airs a complaint or grievance, or expresses concern about misconduct, to his or her immediate supervisor or

7

pursuant to a clear duty to report imposed by law or employer policy, he or she is speaking as an employee and not as a citizen." Id. (quoting Weintraub v. Bd. of Educ. of City of N.Y., 489 F. Supp. 2d 209, 219 (E.D.N.Y. 2007)) (emphasis in original). In response, Reese emphasizes that the employment contract and job description did not require her to report the alleged procurement regulation violations to the Board; moreover, she alleges that she "would not have been derelict in her job duties had she failed to send the memorandum to the Board." ECF No. 9 at 4 (quoting Amend. Compl. ¶ 183).[2]

The court finds it debatable but probable that Reese made the memo within the scope of her employment, which would preclude her from bringing a viable First Amendment claim. See Garcetti, 547 U.S. at 418. To start, Reese presumably prepared the memo in her office and sent the memo to only the Board and to Kennedy, which weighs in favor of finding the memo within the scope of her employment. Cf. Durham v. Jones, 737 F.3d 291, 299 (4th Cir. 2013) (noting that the materials were sent to a broad audience including state and law enforcement offices as well as several media outlets which weighed in favor of finding it a matter of public concern). In other words, Reese sought to inform her direct supervisor, Superintendent Kennedy, and his own supervisors,

---

[2] Reese also stresses that "whether [she] was speaking as a private citizen or it was part of her job responsibilities to report wrongdoing, is an issue which cannot be determined based on the four corners of the Complaint." Id. That argument is without merit because the Fourth Circuit has clearly and unequivocally stated that the first two prongs of Pickering are questions of law. Brooks, 685 F.3d at 371; see also Crouse v. Town of Moncks Corner, 848 F.3d 576, 583 (4th Cir. 2017). The first part of the first prong requires the court to determine whether Reese spoke as a private citizen or public employee. See Pickering, 391 U.S. at 568. On a motion to dismiss, the court must assess questions of law based upon the allegations in the complaint and if the facts stated in the complaint do not allow a court to determine the claim's plausibility; the answer is not additional discovery but rather the claim's dismissal. See Twombly, 550 U.S. at 556.

the Board, to investigate the alleged misconduct; per Reese's own admission, she had regular contact with these parties within the scope of her job.  See Amend. Compl. ¶ 29(a) ("Plaintiff's primary job duties listed in her job description included . . . advising the Superintendent, Board of Trustees, and staff on all legal matters; preparing and rendering legal opinions to the Superintendent, Board, and staff"); cf. Hunter, 789 F.3d at 399 ("Indeed, a 'practical' inquiry into Plaintiffs' day-to-day duties . . . manifestly does not lead to the conclusion that those included reaching out to the Governor's Office about anything at all.").  Reese emphasizes that she "wanted her confidential memorandum to be acted upon and not made public."  Amend. Compl. ¶ 141.  This also weighs in favor of finding the memo was prepared and disseminated within the scope of Reese's employment.  Cf. Durham, 737 F.3d at 300 (finding it dispositive that the plaintiff sought to inform the public).  Finally, the speech at issue here is more like the employee speech found in Garcetti, an internal memorandum prepared by a prosecutor in the course of his ordinary job responsibilities, 547 U.S. at 424; than like the "quintessential" private citizen speech in Lane v. Franks, which was comprised of testimony in court related to public employment and concerning information learned during that employment, 573 U.S. 228, 240–41 (2014).

   Consequently, it is not one hundred percent certain that Reese drafted and sent the memo within the scope of her employment, but it is more likely than not that she did so as a public employee rather than as a private citizen which would preclude the speech from First Amendment protection.  The court need not resolve this uncertainty because its qualified immunity analysis holds that this ambiguity prohibits the court from finding the

9

law clearly established. As such, the court turns to the parties' arguments regarding whether Kennedy is immune from suit because of qualified immunity.

### 2. Qualified Immunity

Defendants explain that Reese's 42 U.S.C. § 1983 claim must fail because Kennedy is entitled to qualified immunity, which provides immunity from suit, not just liability. ECF No. 5-1 at 7–8. Defendants explain that under the test established by the Fourth Circuit, Reese has failed to identify that Kennedy violated a clearly established constitutional right, much less that a reasonable superintendent in Kennedy's position would have known that Reese's confidential memorandum entitled her to protection under the First Amendment. Id. at 9. Thus, defendants argue that Kennedy is entitled to qualified immunity in his individual capacity and must be dismissed from this action. Id.

Reese argues that affirmative defenses—like qualified immunity—cannot be decided on a Fed. R. Civ. P. 12(b)(6) motion. ECF No. 9 at 5–6. Rather, a motion to dismiss is "confined to the four corners of the complaint." Id. An affirmative defense, in contrast, is resolved in later motions such as for summary judgment or directed verdict, or at trial. Id. Thus, Reese concludes that dismissing this action under the qualified immunity argument would require the court to prematurely conduct a factual analysis. Id. In reply, defendants emphasize that the defense of qualified immunity is immunity from suit, not just from the potential liability of the outcome of the suit. ECF No. 15 at 1. Thus, the court may rely on the complaint to determine whether Reese has adequately stated facts to overcome qualified immunity on a motion to dismiss. Id. at 1–2.

Because the first two prongs of the Pickering test are questions of law, "an employer is entitled to qualified immunity if either prong cannot be resolved under

clearly established law." Crouse v. Town of Moncks Corner, 848 F.3d 576, 583 (4th Cir. 2017). "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To defeat a qualified immunity defense, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al–Kidd, 563 U.S. 731, 735 (2011). To hold that a right is clearly established, a court does not need to find "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Id. at 741 (emphasis added). The qualified immunity inquiry depends on the official's "perceptions at the time of the incident in question." Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994); see also Crouse, 848 F.3d at 585 (noting that while an official's perception may be debated, "he is not liable for bad guesses in gray areas"). Importantly, for Reese to overcome qualified immunity, the outcome of the Pickering balancing test must be "beyond debate." Crouse, 848 F.3d at 858 (quoting al-Kidd, 563 U.S. at 741). Finally, "[i]t is incumbent on the courts to review the immunity defense critically at an early stage of the proceedings." McVey v. Stacy, 157 F.3d 271, 275 (4th Cir. 1998).

Defendants argue that Reese has not stated facts that show that Kennedy violated a clearly established right. ECF No. 5-1 at 8. At most, Reese "makes but one conclusory statement regarding her supposed 'right,'" id.; namely, that Reese "had the right to report what she reasonably believed were violations of [District] policies and state regulations to

the Board," Amend. Compl. ¶ 179.  In response, Reese argues that whether Kennedy is entitled to qualified immunity is an affirmative defense that involves issues of fact which Reese has the right to develop and prove.  ECF No. 9 at 5.  As the court explained above, the first two prongs of Pickering are questions of law and the court may evaluate them—and whether a defendant is entitled to qualified immunity—on a motion to dismiss.

The court concluded that it was debatable but probable that Reese sent the memo within the scope of her employment, which means it was not clearly established that Reese's speech was protected by the First Amendment.  In other words, because it was reasonable for Superintendent Kennedy to believe that Reese's confidential memorandum was sent within the scope of her employment, it was reasonable for him to believe that her speech was not protected.  As such, Kennedy is entitled to qualified immunity and the court need not evaluate Reese's § 1983 claim any further.  Thus, the court grants defendants' motion to dismiss Reese's § 1983 claim because the claim is barred by qualified immunity.

### 3. Subject Matter Jurisdiction

The court raises, sua sponte, that if it dismisses Reese's claims brought pursuant to 42 U.S.C. § 1983, it thereafter may decline to exercise jurisdiction over this action even if the breach of contract claims remain against the District and the Board.  All the named parties in this action are citizens of South Carolina, meaning there is no diversity jurisdiction.  Amend. Compl. ¶¶ 1–4; 28 U.S.C. § 1332.  Reese alleges that this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 for deprivation of constitutional rights under 42 U.S.C. § 1983.  However, upon the dismissal

of her federal question claim, the only claims remaining are state law breach of contract claims.

Pursuant to § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction.  See Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); see also Sansotta v. Town of Nags Head, 863 F. Supp. 2d 495, 514–15 (E.D.N.C. 2012), aff'd in part, rev'd in part, 724 F.3d 533 (4th Cir. 2013) ("The elimination of all federal claims before trial is generally a sufficient ground in itself for declining supplemental jurisdiction over pendent state-law claims.").  In evaluating whether to retain jurisdiction, courts consider comity, the existence of a state limitations bar, and considerations of judicial economy.  Id.  Reese filed this case in February 2023, and it remains in its early stages, which minimizes prejudice to the parties if the court were to decline to exercise jurisdiction.  See id.  Weighing in favor of dismissal, the remaining breach of contract claim requires the court decide, in part, the interpretation of South Carolina state law.[3]

---

[3] Defendants explain that the inclusion of the Board as a distinct and separate defendant is duplicative of the suit against the District—the proper party in this suit.  ECF No. 5-1 at 5.  The law of the state determines the capacity of a party to sue or be sued.  Fed. R. Civ. P. 17(b).  Defendants explain that under South Carolina law, "'every school district is and shall be a body politic and corporate' and '[i]n that name it may sue and be sued.'"  ECF No. 5-1 at 6 (citing S.C. Code Ann. 59-17-10).  Thus, the Board acts as and on behalf of the District and thus "is not a legal entity subject to suit separate and apart from the District."  Id.  For these reasons, defendants argue that Reese has failed to state a claim against the Board such that its claims against the Board must be dismissed.  In response, Reese argues that even if the District should contract in its name pursuant to S.C. Code Ann. § 59-17-10, "it is unclear from the employment contract at issue . . . which entity is the contracting party, the District or the Board, as the employment contract repeatedly refers to the [] Board."  ECF No. 9 at 2–3.  Thus, Reese "believes she has named the correct party in her breach of contract cause of actions."  Id.

It is unclear whether defendants are arguing that the Eleventh Amendment applies such that the case is barred by sovereign immunity.  However, to the extent that defendants are relying solely on the statute itself to claim that both the Board and the

See ECF No. 5-1 at 5 (referencing S.C. Code Ann. § 59-17-10). In light of the foregoing, the court declines to exercise jurisdiction over the remaining state law claims.

## IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to dismiss the 42 U.S.C. § 1983 claim and **DECLINES** to exercise jurisdiction over the remaining state law claims.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**September 14, 2023**
**Charleston, South Carolina**

---

District may not be sued simultaneously because such litigation is duplicative, that statement is without clear authority. See ECF No. 5-1 at 5–6. Upon a preliminary review, the court has identified cases in which plaintiffs sue school districts and individual members of the Board of Trustees of a school district in their capacities as members. See, e.g., Stewart v. Larens Cnty Sch. Dist. No. 55, 1992 WL 12014673, at *1 (D.S.C. Oct. 2, 1992). Similarly, the court has identified cases where plaintiffs have sued individual school superintendents, the board of trustees as an entity, and the school district jointly without issue. See, e.g., Snipes v. McAndrew, 313 S.E.2d 294, 295 (S.C. 1984). In any event, the court need not resolve this question of South Carolina law.